Thank you, Your Honors. Good morning, Your Honors. May it please the Court, Howard Davis representing Pablo Castro-Castro, the Petitioner. And again, this is a, we're asking that the Court apply Moran and remand it, remand the case to the Board and to the judge to apply Moran. At the time of the, in this particular case, the individual at issue here that was being smuggled was the, was Mr. Castro's child. And this incident occurred in, in December of 1995. And at the time of the original hearing before the immigration court, the 10 years from that date had not passed. So at that time, he was statutorily ineligible for the reasons mentioned by the immigration judge specifically, did not, predominated the case on the, on that, on the good moral character ground. Since, and when the Board came down with its decision in 2004, again, the time had not passed. So we're simply asking that the Court remand so that the administrative agency may apply Moran. Now, this, the, if I understand correctly, and you, you can correct me if I'm wrong. But my understanding reviewing the case is good moral character was never raised before the Board. The, the issue of good moral character was raised before the Board. There is a section in the, in the brief entitled, the Respondent is a Person of Good Moral Character. So he did raise it. And then the Board itself ultimately considered it and agreed with the immigration judge and stated on page 20 of the administrative record that it agreed with the judge that it, that, that he was, he had not established good moral character. So this was before the Board. They, at least the issue of good moral character. Now, yeah. Now, at that time, of course, the, the Board did not, nobody had the benefit of Moran v. Ashcroft. Right. So the issue is that whether you raised the discretionary waiver before the Board and your argument there is you didn't have anything to raise. There was, there was, there was no legal, first of all, the issue itself, if it, for depending on what, the issue itself of good moral character was certainly before the Board. But now whether, now the whole issue of the framework that Moran created of a, the possibility of a 212-11 waiver in a cancellation context was not before. So therefore, since that legal framework didn't exist, how could the person have even used it? It's quite different from the situation if something already existed and, and it was never raised. This gets to be very confusing. Your, your case was decided after the Khorasani case or however it's pronounced. The BIA decision was after the Khorasani case? Let's see. Khorasani, because there is a mention. I don't think that it cites it. I'm just asking whether it's in fact. Because the Khorasani case, as I understand it, held that these, these waiver provisions do not apply in the voluntary departure context. Or do, yeah, do not. I have to say, you know, that I, I'm just not familiar with that. Well, your client got voluntary departure? Yes. And that was because of the time involved. There was, it was 5 years. For voluntary departure, good moral character is 5 years. So more than 5 years had passed, but not the 10 for cancellation. I, there was an issue brought up, there was an issue brought up in the previous panel, if I may refer to that, about the whole issue of the, the definition. What 101, 101F3 of the Immigration Act, which references and sets up the whole framework of what is good moral character. And then it, and then it refers to particular statutes. For example, this one here, 212A6E, as part of the definition. But the thing is, is that when you, when you look at the 212A6E, the, the, it's all these, all the statements here about waivers. What it, what the, what a waiver does is says that the, that Clause 1, which is the ground of inadmissibility, the, which we'll call definition for purposes of good moral character, does not apply. It says, waiver authorizes, this is Subsection 3, for provision authorizing waiver of Clause 1, see Subsection D11 of this section. And then we go to D11, says the Attorney General may in his discretion, et cetera, waive application of Clause 1. So all that's saying here is, is that it's, we're waiving the application of Clause 1. And since we're in a definitional context, then it waives the application of Clause 1 for purposes of definition under, of good moral character under F3. So for me, the distinction that previous counsel was talking about in the, is a distinction that's not a distinction. So, I mean, I suppose if the, you know, if the Court didn't want to, I mean, at this point, of course, 10 years have passed since the, the activity. It occurred in December of 1995. It's now, we're now in 2008. And under BIA case law, there is no stop time provision. And I just refer the Court to Matter of Bautista-Gomez 23I and N Decision 893, which says specifically that, that the stop time provision applied only to the presence, and that was never an issue here. But it doesn't apply to qualifying relative and good moral character. So if the Board didn't, I mean, if the panel didn't want to, they could just as well remand for now that the 10 years have gone. Okay? Okay. Thank you. May it please the Court. Eric Marsteller for the Attorney General. I'd just like to point off with the Corisani case, Your Honor. That case was issued in 2000, which was before the BIA decision in this case. Yeah. And also, as opposing counsel pointed out, the voluntary departure issue doesn't really matter because the good moral character, the relevant good moral character period in the voluntary departure context is five years. In this case, the alien smuggling occurred more than five years prior to the Board's decision. Cancellation is 10 years, which is why the relevant period applies here. The government believes that under the plain meaning, as my colleague mentioned earlier, under the plain meaning of 212D11, it does not apply to waive good moral character. It only applies to waive inadmissibility. Even if an alien was granted a 212D11 waiver, they would still be unable to establish good moral character if they participated in alien smuggling during the relevant period. I'm sorry. I think I may have misspoke. Still ineligible for cancellation of removal based on the good moral character finding. But if they were applying for an adjustment of status, they would not be rendered inadmissible as a result of that. Is that right? Right. As my colleague mentioned, there's two forms of adjustment of status that I think that are getting confused. There's the typical adjustment of status, which is under INA Section 245, which is adjustment of status as an immediate relative of someone. And that's the one where admissibility is a requirement and a qualifying relative who can get a visa for you. Well, in the cancellation context, it's a different type of adjustment of status. It is not adjustment of status as an alien relative. It is adjustment of status based on the fact that you qualified, you met the statutory requirements for cancellation of removal. I understand that, one of them being good moral character. Right. And one of them for adjustment of status because of a qualifying relative is good moral character, isn't it? Is that the 245? Yes. There is no good moral character requirement for 245. The good moral character requirement for adjustment is only in the cancellation context. So for a 245 adjustment as an alien relative, there's no need to establish good moral character. One needs only establish admissibility, which is why the waiver helps an individual who's seeking for adjustment of status as an alien relative because they need to be admissible. So if that's the case. I'm sorry. So don't you need good moral character for admissibility? Not as a prerequisite, no. You can be admissible without having good moral character per se. That's not a requirement of adjustment. No, but you can't be admissible if you've committed a crime. Right. If you participated in alien smuggling, you'd be inadmissible under. That's how we get there. Right. Under 212A2. So that's why. That's your point. Right. So the waiver helps an individual seeking 245 adjustment because they are inadmissible if they participated in alien smuggling. And to be eligible for adjustment, they need to cure that inadmissibility, and they can do so by getting the 212D11 waiver. Okay. So what do we do with Moran? Moran, I mean, first, as my colleague mentioned, it can be distinguished because the Moran court did not address these issues. Secondly, we argue that Moran is dicta to the extent that it creates. What you said first didn't address these issues. It might address exactly what it addressed. I'm sorry. Let me be more specific, Your Honor. It didn't address the issues of the distinguishing adjustment of status under 240A, B, and adjustment of status under 245A or 245. It didn't address those issues, the distinctions between adjustment of status as an alien relative versus adjustment of status under cancellation. The second argument is that we think Moran, for the three rules, at least the three rules proper to Moran are dicta, because they weren't necessary to the outcome of the Moran decision, and because the issue was not. But when you say that, aren't you really saying that they could have reached the decision another way? And dicta, in order to say that this person did not qualify because the he was not yet married to the alien, you really have to say that the statute applies to people who are married at the time of the alien smuggling. Don't you? I mean, isn't that the necessary logical step, which is a holding that applies? I'm not sure it is, Your Honor. If the waiver said it only applied to children of the applicant and it didn't include wife at all, one could look at the statute and automatically know that there's no reason to make any rules because it doesn't apply to children, so we don't need to see if the waiver, who exactly is eligible for the waiver. This case isn't really that much different. The statute said it applies to a wife, not a fiance or a future spouse. So just by looking at the plain language of the statute, there's a preliminary step would be like, well, this can't apply here because this person doesn't meet one of these requirements. I'd also point to the Supreme Court's decision in Wainwright where this is in our briefs. I don't want to get too far into the details, but in Wainwright found that an earlier Supreme Court case called Witherspoon was dicta, and the Witherspoon court, it had to do with who could be excluded from a jury and what were reasonable grounds in a death penalty case. And the Witherspoon case in a footnote said who, let me make sure I get this right, it focused on who could not be excluded. It didn't focus on, but the ultimate outcome in Witherspoon was who could be excluded. It applies to this case because the panel's holding, and then the Wainwright court found that dicta because it. Sotomayor, you could get to this, the panel could have said, without writing any opinion at all, the statute doesn't apply to, unless you're married, these people weren't married, therefore, we don't have to reach any other issue. But it didn't do that. It went very carefully through. It analyzed our prior decisions. It said the statute applies here, here, and here as a holding. This person is not within that category. Therefore, it's not part of the one of the people with whom the statute applies. Therefore, this person loses. So the holding is it applies only to other people. The problem we got. Be that as it may, there's another reason it's dicta, and that's because neither party addressed the issue in their briefs in Moran. And the Supreme Court has said that if an issue is not addressed by either party during briefing, it can also constitute dicta. So that would be our secondary argument, is that because it was, as the Seventh Circuit has said, it was not refined by the fires of adversary presentation. So the Moran holding was based on its own interpretation of the statute without input from either of the parties.   There was no petition for re-hearing. I can't remember. There was not. The government prevailed on Moran, so there was no petition for re-hearing. There was no petition for re-hearing, yes. Because, again, because they found that there was no spat, so the government prevailed. So how do we know what was presented in Moran? I've cited the all the briefs from the parties. There's Westlock's. Is that what we look to? What? So do we go back when we're applying an opinion to the briefs? I'm not aware that we've done that before. That's what the Supreme Court did, Your Honor, in McDaniel v. Sanchez, a 1981 case, where they agreed with an earlier statement by Chief Justice Berger that a statement by the court in a footnote was dicta because it was not addressed by either party during briefing. It was what Chief Justice Berger said, and the Supreme Court later agreed that that was dicta because it was not addressed by either party during briefing. And the opinion didn't discuss it at all? No. I don't recall how much it went into detail, but it did say that because it had not been addressed during briefing, that statement by the court in an earlier case was dicta. What case is this? This is the first case is East Carroll Parish School Board v. Marshall. And the case that found that that was dicta was McDaniel v. Sanchez. They're both cited in our brief. I'd also note that in his reply brief, Petitioner cites the two cases that he says support his view that this case is not dicta. I'd like to distinguish both of those. The first he cites is Guadalupe Cruz. However, that court said that the earlier case was made with deliberate reasoning and in response to the government's contention, et cetera. So it was made in response to arguments from the party. So, therefore, that was the explanation why it was not dicta. The other case he cites is Export Group v. Reef Industries. And in that case, the court found that the earlier decision was, in fact, dicta. In McDaniel and Carroll, these were both Supreme Court cases. That's correct. And the Supreme Court was talking about the briefing to the Supreme Court. That's correct. Where the Supreme Court takes specific issues to decide. I'm just wondering about the applicability of that to us. And you're suggesting because this Court doesn't request the issues. You get appeals. You get Petitioner as a right. We don't ask for the issues if the issue is one which reaches the same, which concerns the same result that the Petitioner wants. It gets to be a little rigid. I hadn't thought of that, Your Honor. But the Seventh Circuit in United States v. Crawley, which this Court has cited positively in the Export Group case, discusses that. It actually has a lengthy discussion on what is and what is not dicta. And in Crawley, the Seventh Circuit stated without citing, I'm not sure if it cited the Supreme Court cases, but it said if a case has not been presented by either of the parties, any ruling on the Court by that issue should be dicta because, as I said earlier, it's the Seventh Circuit's language. It has not been refined by the fires of adversary presentation. So even if the Court were not to find the Supreme Court's rules binding on it, it still, we believe, is dicta based on the facts. So it really depends on what level of generality you want to talk about issues. I suppose so, Your Honor. Okay. Thank you. You have used your time. What's that? We've helped you use your time. I appreciate it. I'd also like to point out, as my colleague earlier did. You're going to – I think you're going to – are you two up again in this case? Yes. I want to make a point about this case really quickly, Your Honor. Really quickly. It was about the exhaustion and the waiver. We feel that the 212d11 issues and the good moral character issues were not raised before the board, so they've not been exhausted, so there's no jurisdiction. And with that, thank you. You said that earlier in your – even though it may not have been raised, the board discussed the matter. Yes. So that – yes, so that – In some way or other, it was before the board. Yes. And the board – the board considered that. And I know that there are Ninth Circuit decisions that do talk about that. I just don't have them in my head at this moment, but they – Well, the issue – the good moral issue before the board was one in which there's a finding, but your client just said he didn't smuggle any of it. He didn't challenge the good moral character as a – as a status, but just said, I have good moral character. Do you know what you mean? But if the person is saying – if the person is saying that it's challenging that that – that the person, in fact, had good moral character, and then regardless of whether or not the board thought much of the Petitioner's argument on appeal, the fact of the matter is that the board did consider it and said, you know, he hasn't persuaded us that the judge was wrong. So I think that – I mean, so the board did consider it. So they said based on the testimony of the respondent's wife that they arranged for their son to enter the United States with the assistance of a smuggler, we find the I.J. properly determined he was disqualified from establishing good moral character.  That's fine. I did submit to the Court two very recent decisions, unpublished memorandum from last – from memorandum from last year. One is Godinez-Tejeda v. Keisler. The other is Carrillo-Estrada v. McCasey. The latter came down in November, and the former came down in October, both applying same situation and just remanding it because the administrative agency lacked the benefit of morale.  Thank you. Thank you. The case just argued is submitted. We'll hear the next case, which is Calo-Leon v. McCasey.
judges: Wallace, Hug, Schroeder